**Dated: September 25, 2007**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**KAY DON GOSS**  Case No. 05-70378
a/k/a **KAY D. GOSS**  Chapter 7
a/k/a **K.D. GOSS**

                Debtor,

**GERALD R. MILLER, Trustee on
behalf of the Bankruptcy Estate of
Kay Don Goss, Debtor**

                Plaintiff,

vs.  Adv. No. 06-8164

**D. NEAL MARTIN,
CHARLES M. LASTER,
LARRY McMAINS, and
JOHN GREGG GOSS, Trustee of the
Hurshel H. Goss Revocable Living Trust**

                Defendants.

**O R D E R**

On the 30th and 31st days of July, 2007, the above-referenced adversary proceeding came on

for trial only as to Defendant Charles M. Laster. Appearances were entered by Clifton Naifeh, Attorney for Plaintiff, and Robert Inglish, Attorney for Defendant Charles M. Laster. After reviewing the evidence and testimony, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Debtor filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on February 4, 2005. Plaintiff commenced this adversary proceeding on September 28, 2006, seeking to avoid a $13,806.25 payment to Defendant and a $30,000.00 mortgage given in favor of Defendant as preferential transfers under 11 U.S.C. §§ 547(b) and 548.

Prior to filing bankruptcy, Debtor and Todd and Misty Bowles were involved in state court litigation arising from an injury suffered by Mr. Bowles in 1999, at his workplace while employed by Debtor and Debtor's son, Steven Michael Goss, doing business as Goss Feed Company.[1]

In March of 2000, Debtor and Steven Goss formed Goss Feed Company, L.L.C. ("LLC"). In Debtor's March 20, 2001 Divorce, the divorce court found:

> The business initially began as a common, joint and equal operation which grew into "GOSS FEED" which, notwithstanding the late in the game agreement between father and son, remains an equal interest operation today; and ... "GOSS FEED" is a partnership wherein Steven Goss owns a 50% interest and Kay Don Goss owns a 50% interest.

Plaintiff's Ex. 35.

On November 7, 2002, the Oklahoma Secretary of State terminated the LLC. Debtor listed his interest in the LLC as part of the assets of his bankruptcy estate.

In 2001 the Bowles filed suit against the Debtor and Steven Goss, doing business as Goss

---

[1]Steven Goss also filed a Chapter 7 bankruptcy proceeding on February 4, 2005, Case No. 05-70374.

EOD: 9/25/07 by msp
Case 06-08164   Doc 133   Filed 09/25/07   Entered 09/25/07 15:01:09   Desc Main
Document      Page 2 of 13

Feed Company and Goss Cattle Company ("Goss Defendants"), as well as a number of other defendants, in Seminole County, Oklahoma, Case No. S-CJ-01-127. The causes of action included fraud, abuse of process and misrepresentation. There were also allegations of fraudulent transfers of assets among the Goss Defendants, negligence and wrongful discharge.

Defendant began his representation of the Goss Defendants in the Bowles litigation on April 30, 2004. Defendant was initially paid $1,250.00. Debtor shut down the feed business during the summer of 2004.

In October, 2004, Defendant received a $4,000.00 payment from Debtor, and a $4,000.00 payment from Steven Goss for legal services performed in the Bowles litigation. On November 30, 2004, just a few days before the initial trial setting, Debtor executed an Agreement, Promissory Note and Real Estate Mortgage in favor of the Defendant in the amount of $30,000.00. At the time of this transaction, Defendant was owed $20,913.75 in attorney fees and costs according to Defendant's billing statements.

A mistrial occurred in the first jury trial. In January, 2005, a non-jury trial was held as to several legal issues in the case. The second jury trial was held in late January and early February, 2005, on the remaining tort claims. The jury returned unanimous verdicts in favor of Mr. Bowles in the amount of $548,925 and Mrs. Bowles in the amount of $62,000 against both the Debtor and Steven Goss.

The trial proceeded to the second stage for a determination of punitive damages. Both Steven Goss and the Debtor filed for bankruptcy relief in this Court on February 4, 2005. The trial judge was notified of Steven Goss' bankruptcy filing, therefore he excused Steven Goss from the punitive damages stage. The judge was not given notice of Debtor's bankruptcy filing, therefore

3

he proceeded to trial as to punitive damages. The jury returned a verdict as to punitive damages in favor of the Bowles, but entered the amount of punitive damages as zero. The jury verdict was not reduced to judgment until this Court granted the Bowles' Motion for Relief from Automatic Stay. This Court has previously ruled in an adversary proceeding filed by the Bowles, Adv. No. 05-7089, that this judgment is excepted from discharge.

As early as September, 2004, to the present time, Neal Martin was and is an attorney for the Debtor. Mr. Martin represented the Debtor in 2004 in a personal property foreclosure, initiated by the First National Bank and Trust Company of Ada, in the District Court of Seminole County, Oklahoma.

Debtor paid the Bank debt using in part a distribution to himself from the Hurshel H. Goss Revocable Living Trust ("Trust"). The Bank then assigned to Debtor the causes of action in the foreclosure suit, as well as the promissory note and security agreement originally executed between the Bank and the LLC. On October 19, 2004, Debtor assigned the causes of action, along with the promissory note and security agreement, to himself as the trustee of the Trust, apparently to control the sale of the assets of the LLC.

On October 27, 2004, by agreement of the parties, the state court ordered the sale of certain personal property. The court further ordered that the proceeds of the sale be placed in an interest bearing escrow account until further order of the court. The court also ordered that all issues regarding ownership of the property, as well as the disposition of the proceeds, were to be reserved for a future hearing.

On February 2, 2005, Mr. Martin, believing that the state court temporary restraining order had expired, issued a number of checks, including a check in the amount of $13,806.25 to the

4

Defendant. Two days later, Debtor filed his bankruptcy petition. This Court heard the testimony of Judge Butner, the state court judge in the foreclosure action. Judge Butner testified that an order was never entered by him determining the ownership of the property at issue nor allowing for the distribution of proceeds. A proposed "Agreed Order" authorizing distributions was submitted to him but was never signed nor entered. This proposed agreed order provided for the transfer of $13,806.25 to Defendant.

Debtor's bankruptcy petition was filed before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), therefore this Court will apply the Bankruptcy Code as it was in effect prior to the BAPCPA.

The Plaintiff may avoid fraudulent transfers pursuant to § 548, which provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily -
    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
        (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
        (II) was engaged in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548.

The four elements required under § 548(a)(1) are: (1) that the debtor has an interest in

5

property; (2) that the debtor has voluntarily or involuntarily transferred this interest; (3) that the transfer occurred on or within one year of the filing of the debtor's bankruptcy; and (4) that the transfer was made with the actual intent to hinder, delay, or defraud any entity which was a creditor of the debtor on or after the date of the transfer. *Kaler v. McLaren (In re McLaren),* 236 B.R. 882, 899 (Bankr. D.N.D. 1999) (citations omitted). The intent of the debtor is the focus of § 548(a)(1). *Id.* Courts may infer fraudulent intent from the circumstances surrounding the transfer. *Id; see also Nordberg v. Republic Nat'l Bank of Miami (In re Chase & Sanborn Corp.),* 51 B.R. 739, 740 (Bankr. S.D. Fla. 1985). Courts have looked at the following factors or "badges of fraud":

> (1) the transfer was made to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer was concealed;
> (4) the debtor had been sued or threatened with suit prior to the occurrence of the transfer;
> (5) the transfer was of substantially all of the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed other assets;
> (8) the value of consideration received for the transfer was not reasonably equivalent to the value of the asset transferred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred.

*McLaren,* 236 B.R. at 899 (citing *Dionne v. Keating (In re XYZ Options, Inc.),* 154 F.3d 1262, 1272 (11th Cir. 1998); *Schieffler v. Beshears (In re Beshears),* 182 B.R. 235, 239 (Bankr. E.D. Ark. 1995)). The *McLaren* court further noted that the more common badges of fraud are:

> (1) actual or threatened litigation against the debtor;
> (2) purported transfer of all or substantially all of the debtor's property;
> (3) insolvency or other unmanageable indebtedness on the part of the debtor;
> (4) a special relationship between the debtor and the transferee; and
> (5) retention by the debtor of the property involved in the putative transfer.

*Id.* at 900 (citations omitted). Once the Trustee has established sufficient badges of fraud are

6

present, she is entitled to a presumption of fraudulent intent. *Id.* (citations omitted). Thereafter, the burden shifts to the transferee to show some legitimate supervening purpose for the transfers. *Id.* (citations omitted).

"Where the transferee is in a position to dominate or control the debtor's disposition of his property, the transferee's intent to hinder, delay or defraud creditors may be imputed to the debtor." *Pirrone v. Toboroff (In re Vaniman Int'l, Inc.)*, 22 B.R. 166, 183 (Bankr. E.D.N.Y. 1982) (citations omitted).

This Court has previously found that Debtor has treated the Trust as his own personal funds and has attempted to orchestrate the timing of the distributions of Trust property to prevent certain creditors from gaining access to those funds. *Order Regarding Exemptions,* Case No. 05-70378 (Sept. 18, 2006).

As to the two transfers presently at issue, this Court cannot find sufficient factors indicating an intent by the Debtor to hinder, delay, or defraud certain creditors. Debtor did not retain possession or control over the property after the $13,806.25 transfer was made by Mr. Martin. Neither transfer was concealed by the Debtor. The mortgage and the $13,806.25 transfers did not comprise substantially all of the Debtor's assets. This Court will then turn to Plaintiff's cause of action under 11 U.S.C. § 547.

Section 547 provides, in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made -
        (A) on or within 90 days before the date of the filing

7

>           of the petition; or
>           (B) between ninety days and one year before the date
>           of the filing of the petition, if such creditor at the time
>           of such transfer was an insider; and
>   (5) that enables such creditor to receive more than such creditor
>   would receive if -
>           (A) the case were a case under chapter 7 of this title;
>           (B) the transfer had not been made; and
>           (C) such creditor received payment of such debt to the
>           extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purpose of the Trustee's avoidance power is to insure all creditors receive equal distribution from assets available. *Gill v. Winn (In re Perma Pac. Properties)*, 983 F.2d 964, 968 (10th Cir. 1992). A debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the bankruptcy filing. 11 U.S.C. § 547(f).

Defendant argues that the $13,806.25 transfer was not an interest of the Debtor in property of the bankruptcy estate and therefore is not a preferential transfer. Defendant also argues the transfers to Defendant were contemporaneous exchanges for new value and may not be avoided. Further, at trial Defendant argues that the transfers were made in the ordinary course of business.

First, this Court will address Defendant's argument that the $13,806.25 transfer was not an interest of the Debtor in property. The "interest of the debtor in property" as it relates to preferences is given a broad interpretation that is commensurate with the broad definition of "property of the estate." *Begier v. IRS,* 496 U.S. 53, 58-59 (1990). Property of the estate includes all legal and equitable interests of the Debtor as of the commencement of the case. *Id.*; 11 U.S.C. § 541(a)(1).

Funds of a third party have been considered the interest of a debtor in property in preference litigation. *In re Jaggers,* 48 B.R. 33, 36-37 (Banrk. W.D. Tex. 1985). As noted by the court in Jaggers:

> When a debtor uses the funds of a third party to pay an obligation of the debtor the

8

> court must look to the source of the control over the disposition of the funds in order to determine whether a preference exists. If the debtor controls the disposition of the funds and designates the creditor to whom the monies will be paid independent of the third party whose funds are being used in partial payment of the debt, then the payments made by the debtor constitute a preferential transfer. Hence, if the funds are available for payment to the creditors of debtor generally the funds are an asset of the estate and payment thereof constitutes a diminution of the estate.

*Id.* This Court finds that the $13,806.25 transfer was a transfer of an interest of the Debtor in property. Debtor exercised control over the disposition of the funds and used the funds to pay several creditors.

"An antecedent debt owed by the debtor occurs when a right to payment arises - even if the claim is not fixed, liquidated, or matured." *In re First Jersey Sec., Inc.,* 180 F.3d 504, 511 (3d Cir. 1999); *see also In re Bennett Funding Group, Inc.,* 220 B.R. 739, 742 (2d Cir. BAP 1998) ("'an antecedent debt' is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt"). "The right to payment generally arises when the debtor obtains the goods or services." *First Jersey,* 180 F.3d at 511. "[L]egal claims arise when the legal services are performed, not when the bill itself is presented to the client." *Id.*

In this case, Defendant had already performed legal services on behalf of the Debtor that greatly exceeded the $13,806.25 payment. Further, as early as December 10, 2004, the $13,806.25 payment was listed in the proposed agreed order that was never entered. As for the mortgage transaction, Defendant had already performed $20,913.75 worth of legal services as of the date of the mortgage transaction. As a result, this Court finds that the $13,806.25 transfer was made on account of an antecedent debt owed by the debtor before payment, and the mortgage transfer was made on account of an antecedent debt in the amount of $20,913.75. The remaining $9,086.25 of

9

the mortgage transfer was not made on account of an antecedent debt, rather it constituted new value, and is therefore not subject to avoidance.

The transfers[2] were made to Defendant, a creditor, on account of an antecedent debt owed by the Debtor before the transfer was made. The transfers were made within the ninety days before the date of the bankruptcy filing while the Debtor is presumed, and appears to have in fact been insolvent. Further, in examining the Claims Register in the Debtor's bankruptcy, it is clear that the transfer enabled Defendant to receive more than he would have received had he been scheduled as an unsecured creditor in the Debtor's bankruptcy. Accordingly, all elements of a preference are present in this case. Now this Court will examine Defendant's asserted defenses.

The Trustee may not avoid a transfer to the extent it was:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). Section 547(c)(1) "protects transfers that do not result in diminution of the estate because unsecured creditors are not harmed by the transfer if the estate was replenished by an infusion of assets that are of roughly equal value to those transferred." *Gonzales v. DPI Food Products Co., (In re Furrs Supermarkets, Inc.),* 296 B.R. 33, 39 (Bankr. D.N.M. 2003); *see also Manchester v. First Bank & Trust Co. (In re Moses),* 256 B.R. 641, 652 (10th Cir. BAP 2000).

Defendant bears the burden of proof on § 547(c) issues pursuant to § 547(g).

"New value" is defined by the Code as:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither

---

[2] Discussion of the "transfers" in the remainder of this Order refers to the $13,806.25 transfer and the $20,913.75 portion of the mortgage transfer.

10

Case 06-08164   Doc 133   Filed 09/25/07   Entered 09/25/07 15:01:09   Desc Main
Document      Page 10 of 13

void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

As stated above, the $13,806.25 transfer was referenced in a proposed agreed order as early as December 10, 2004. The $13,806.25 payment was for past services, and was not a contemporaneous exchange for new vale. As for the mortgage transfer, the $20,913.75 portion was not a contemporaneous exchange for new value. The $20,913.75 in debt already owed was merely transformed from unsecured debt to secured debt, which does not constitute new value. *In re Spada,* 903 F.2d 971, 976 (3rd Cir. 1990). Further, an attorney's promise of continued representation in exchange for payments toward the attorney's bill is not new credit or new value. *In re Electronic Metal Products, Inc.,* 916 F.2d 1502, 1506 (10th Cir. 1990).

The transfers were not contemporaneous exchanges for new value, nor were the transfers substantially contemporaneous exchanges.

The Trustee also may not avoid a transfer to the extent that it was:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). "Subsection (B) of this section creates a subjective test, i.e., whether the transfers were ordinary as between the parties, and subsection (C) creates an objective test, i.e., whether the transfers were ordinary in the industry. *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1020 (10th Cir. BAP 1998). Courts, in determining whether payments are ordinary as between the parties in subsection (B), look at the following factors:

11

> (1) length of time the parties were engaged in a transaction;
> (2) whether the amount or form of tender differed from past practices;
> (3) whether the debtor and creditor engaged in any unusual collection or payment activity; and
> (4) the circumstances under which the payment was made.

*Id.* at 1020-21. "These factors are typically considered by comparing pre-preference period transfers with preference period transfers." *Id.* at 1021 (citations omitted). If there are no prior transactions, courts should look to see if "the debtor complied with the payment terms of its contract." *Id.*

Under the objective test of § 547(c)(2), this Court will examine whether the transfer was ordinary in the industry. *Sunset Sales,* 220 B.R. at 1020. The Court of Appeals for this circuit has held that "[o]rdinary business terms therefore are those used in 'normal financing relations': the kinds of terms that creditors and debtors use in ordinary circumstances, when debtors are healthy." *In re Meredith Hoffman Partners,* 12 F.3d 1549, 1553 (10th Cir. 1993) *cert. denied,* 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994).

Defendant offers no evidence that the transfers at issue could be considered ordinary transfers in the industry, particularly the mortgage transaction. As for the subjective test, the history of payments show no pattern or ordinary course of business between the parties. There was an initial payment of $1,250 in April, 2004. In October, 2004, Debtor made a $4,000 payment. Then, in late November, 2004, the mortgage transaction occurred, and in February, 2005, a check was issued to Defendant from Mr. Martin's trust account, at the direction of Debtor. This Court cannot find that the transfers were made in the ordinary course of business. Accordingly, the transfers were preferences that may be avoided by the Trustee.

IT IS THEREFORE ORDERED that Judgment be entered in favor of the Plaintiff in the amount of $13,806.25, plus interest.

Case 06-08164   Doc 133   Filed 09/25/07   Entered 09/25/07 15:01:09   Desc Main
Document      Page 12 of 13

IT IS FURTHER ORDERED that Judgment be entered in favor of the Plaintiff in that $20,913.75 of the mortgage transaction constitutes a preferential transfer and is avoided.

###

13